# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **JEREMY J. QUINN, JR.,** | ) | **Case No. 3:14CV1758** |
| | ) | |
| **Petitioner,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **v.** | ) | **Magistrate Judge George J. Limbert** |
| | ) | |
| **JAY FORSHEY, WARDEN,** | ) | **Report and Recommendation** |
| | ) | **of Magistrate Judge** |
| **Respondent.** | ) | |

On August 2, 2014, Petitioner Jeremy J. Quinn, Jr. ("Petitioner"), pro se, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. ECF Dkt. #1. Petitioner seeks relief for alleged constitutional violations that occurred during his trial in the Lucas County, Ohio Court of Common Pleas, where he was convicted of one count of kidnapping in violation of Ohio Revised Code ("ORC") §2905.01(A)(4) and six counts of rape in violation of ORC §2907.02(A)(2). ECF Dkt. #23-1 at 5-12. On February 5, 2015, Respondent Jay Forshey, Warden of The Ohio State Penitentiary, Youngstown, Ohio ("Respondent"), where Petitioner is incarcerated, filed an answer/return of writ. ECF Dkt. #23. On February 17, 2015, Petitioner filed a traverse and on March 4, 2015, Respondent filed a reply to Petitioner's traverse. ECF Dkt. #s 24, 25.

Petitioner has also filed the following motions: a motion for leave to file an amended petition (ECF Dkt. #9); two motions for evidentiary hearing (ECF Dkt. #s 12, 26); a motion for discovery (ECF Dkt. #13); and a motion for appointment of counsel (ECF Dkt. #14). Respondent has filed responses to those motions and Petitioner has filed replies. ECF Dkt. #s 10, 16, 17, 18, 19, 20, 27, 28.

For the following reasons, the undersigned RECOMMENDS that the Court DISMISS Petitioner's § 2254 federal habeas corpus petition its entirety with prejudice and consequently deny all of Petitioner's motions:

## I.     SYNOPSIS OF THE FACTS

The Sixth District Court of Appeals of Ohio set forth the relevant facts on direct appeal. These binding factual findings "shall be presumed to be correct," and Petitioner has "the burden of

rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1);

*Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 119 S.Ct. 2403 (1999):

> In this case, the victim testified that, on July 18, 2005, she came home around noon after spending the night at a friend's house. She took a shower and began to get ready for work around 3:00 p.m. She had to be to work at 4:30 p.m. and left her house between 4:10 p.m. and 4:15 p.m. She got into her 2000 Plymouth Neon, which was parked in her driveway, when she heard someone speak. She turned around and saw a black male, whom she did not know and had never met, coming into her car. The victim identified appellant as the person who entered her car. She testified that appellant came up to her car with a skinny silver knife, like a butterfly knife, and told her to get down. She screamed and appellant told her to stop or he would kill her. He put her head under the dashboard and put her legs up on the passenger's seat. The victim testified that appellant drove for three to five minutes, but she could not see anything from her position under the dashboard.

> When appellant stopped the vehicle, he told the victim to get in the back seat, where he joined her. After going through her purse, he told her to take off her clothes. She testified that appellant cut the strap of her shirt with his knife. She testified that appellant was wearing a black tee shirt and navy blue shorts. She also testified that he had scratches on his lower arm and a tattoo of a dog on his chest that said, "Fear or feel me." The victim stated that, while in the car, appellant made her put his penis in her mouth, and he put his penis in her vagina and anus. Appellant then made the victim exit the car, where he put his penis into her vagina two more times and again into her anus. Once outside the car, the victim could only see trees and a gray roof of a nearby building. Appellant then put the victim back into the car where he proceeded to masturbate. Appellant made the victim swallow his ejaculate.

> The victim also testified that appellant made her kiss him, that he sucked her breasts and licked her vaginal area. She put clothing back on, but had to wear pants from her trunk because she was unable to get her jeans back on due to her sweating. Appellant drove the victim, who was again under the dashboard, to a driveway around the corner from her house. He wiped down the steering wheel and the interior of the vehicle and left, after telling the victim "not to hate black people, because not all black people are the same, not all black people do this to people." The victim drove home. The victim was 16 years old in December 2005, at the time of the trial.

> When she arrived home, her neighbors Andrew and Karen Shilling were outside. Karen asked the victim if she had run into Andrew's car. The victim said that appellant had hit Andrew's car, that he raped her, and that he was probably watching her. Ms. Shilling took the victim into her garage and called 911. The victim described appellant to the 911 operator and police arrived on the scene. Before going to the hospital, while still at the Shilling's home, the victim testified that she was shown a photo array. She testified that she did not identify appellant immediately because his hair had been in corn rows when she saw him, but he was not pictured that way. Nevertheless, she identified appellant as the perpetrator. The victim did not recall seeing a photo array while she was at the hospital.

> Karen Shilling testified that she had gone out around 4:15 p.m., on July 18, 2005, to get the mail and saw "a black male riding a bike very slowly past and he was staring at me, and I did look at him, but not for long, so I can't identify him." She, however, described his bicycle as being dark in color and stated that the male's hair was "close to his head." Ms. Shilling testified that she never saw him before and "just kind of got a funny feeling it just wasn't right," but only got the mail and went back in the

house. About an hour later, approximately 5:15 p.m., she and her son Andrew were leaving the house and she noticed that his car, which was parked in the street, had been hit. She then saw the victim walking over from between the cars in her driveway, looking "very nervous, very scared." Ms. Shilling asked the victim if she had hit the car and she said, "no, he did it * * * he raped me." She described the victim as "absolutely terrified, panicked," and stated that the victim "flipped out and said no, you can't call 911. He said he would kill my family and he'll kill me and now he's going to kill you also." Ms. Shilling called 911 and the police came immediately. Ms. Shilling stayed about 20 minutes and left once the victim's siblings were there to comfort her. She also testified that she had not heard any collision with the cars, but noted that she had the air conditioning on in the house that day. Ms. Shilling stated that she had identified the bicycle, upon which she had seen a black male riding, for Detective Robert Cowell.

Sergeant Clarence Whalen with the Sylvania Township Police Department testified that he questioned the victim at the Shilling's house. He stated that the victim described scratches on the perpetrator's right forearm and a dog tattoo with "fear me" or "feel me." Whalen told dispatch the additional identifying information and retrieved a photograph from his vehicle. He testified that the victim identified appellant as the perpetrator. About 20 minutes later, after the victim left for the hospital, Whalen met with sheriff's deputies at appellant's address on Dorr Street. Appellant's address on Dorr Street was approximately one mile from the victim's home. Appellant was being held in custody in the backseat of a patrol car and was taken to the police station. En route to the station, Whalen stopped back at the victim's residence to retrieve a bicycle that had been found next to her house.

Deputy Sheriff Christopher Gonia testified that he went to appellant's address on Dorr Street and informed appellant's father that appellant was a suspect in a rape that had just occurred off of Bancroft Street. Appellant came downstairs wearing nothing but denim shorts, which he was fastening closed. Gonia testified that appellant had a tattoo of a dog with some writing on his chest. After speaking with appellant, Gonia notified him he would be taken to the police station for further questioning. Appellant requested shoes. Gonia and appellant's father went up to appellant's room where Gonia saw navy colored shorts and several black tee shirts on the bed. Gonia took possession of the items of clothing since the perpetrator had been described as wearing navy shorts and a black tee shirt. Gonia testified that the clothing was wet. When Gonia returned downstairs with the clothing, appellant became irate and stated that the clothes could not be taken without a search warrant. Appellant was then placed in a patrol vehicle.

Detective Robert Cowell with the Sylvania Township Police Department testified that he prepared a photo array including appellant's picture around 6:15 p.m. and showed the victim the array at the hospital. He testified that she immediately identified appellant as the man who had raped her. Approximately 11:00 p.m., Cowell executed a search warrant for appellant's parent's home to attempt to recover appellant's underpants and the knife used to threaten the victim. The underpants were not recovered. Cowell testified that Deputy Gonia indicated that the condition of the room had been changed and that items were put away that had been out earlier that day. A knife matching the description provided by the victim was found in appellant's father's pocket. Appellant's father had initially denied having such a knife, but the knife was found on his person during a pat down search.

Cowell interviewed appellant after he was placed under arrest. When informed he was under arrest for rape and kidnapping, appellant responded, "If you ain't got the DNA, * * * you ain't got nothing * * *." Regarding his whereabouts at 4:00-4:15

-3-

p.m., appellant told Cowell he was at a video store and at home during the day, but never indicated where he was around 4:00 p.m., and never stated that he had been with the victim. Cowell further testified that appellant had scratches on his forearm and a tattoo of a dog that said, "Fear or feel me."

Approximately three days after the incident, Cowell drove the victim around the vicinity of the crime scene, but, after two hours, the victim could not find the location. Cowell testified that in the vicinity of the victim's home, there were numerous wooded areas and gray buildings like those described by the victim.

On cross-examination, Cowell testified that no latent fingerprints were found in the Neon or on the bicycle. Cowell also testified that the victim selected the knife seized at appellant's address out of five knives, indicating that it was the most similar to the knife the suspect used. Regarding appellant's whereabouts, Cowell testified that he did not follow up with the video store because it "[d]idn't matter much to [him] if [appellant] was buying videos at 12:00 that day," when the crime occurred after 4:00 p.m.

Raquel Ruiz, R.N., a sexual assault nurse examiner, went to Flower Hospital on July 18, 2005 to conduct a sexual assault examination on the victim. Ruiz testified that the victim had a bruise on her neck, where the victim indicated appellant had sucked her neck, puncture wounds to both palms, a bruise on her upper medial inner thigh, a scratch on her left medial knee, abrasions on both her back and her scapula region, three skin tears along her anus, and dirt and debris in her vaginal vault and perineum area.

Linsey Windau, a forensic scientist in the serology DNA section of the Ohio Bureau of Criminal Identification and Investigation, testified that she performed serological tests on the sexual assault evidence collected from the victim. Windau testified that seminal fluid was found on the vaginal swabs and panties, and Amylase, which is a component of saliva, was found on the panties, and on the swabs of the breast and neck. Windau conducted DNA analysis of the fluids found and the DNA standards of the victim and appellant, finding the following:

> "For the stain on the crotch of the underwear in the non-sperm fraction there was a mixture of the profiles that were generated that were consistent with being a mixture from [the victim]-she was major contributor-and [appellant] was the minor contributor. On the sperm fraction of that same stain there was a mixture of [appellant] being the major contributor, and [the victim] and unknown individual, and [the victim] and the unknown individual being minor contributors.

> "On the breast dried stain swab there was a mixture of [appellant], who is the major contributor, and [the victim] the minor contributor, and on the neck dried stain swab a mixture of [the victim] being a major contributor, [appellant] and an unknown individual both being minor contributors."

Windau testified on cross-examination that she did not test the vaginal swab because she received a stronger indicator from the stain on the panties. She also testified that she did not know whether the unknown person, whose DNA was also present, was male or female.

Appellant testified in his own defense that he had been released from prison in Marion, Ohio, on the morning of July 14, 2005. After taking a Greyhound bus to Toledo, appellant went to a Subway restaurant in the Central Avenue and McCord

Road area, where he saw the victim. After approaching the victim and talking with her, appellant stated that he gave her the phone number for his parent's house on Dorr Street, which she programmed into her cell phone. Appellant testified that later that evening he received a phone call from the victim which lasted one to two hours. On July 16, 2005, appellant claimed to receive another call from the victim around noon. Appellant testified that they arranged to meet up in the area of Yates Street and Central Avenue, which occurred around 2:30 p.m. Appellant stated that he and the victim drove to Baskin Robbins and then she returned him to the Yates area.

Appellant testified that he did not see the victim again until July 18, 2005. According to appellant, the victim called him around noon, he suggested that they rent videos, and he had the victim pick him up and take him to Family Video on the corner of King Road and Bancroft Street. After renting videos, appellant stated that the victim dropped him back at his house and said she would return later that day. Appellant testified that the victim picked him up at his residence around 3:00 p.m. and took him to her house, where she proceeded to sit in his lap and kiss him. Appellant testified that they were kissing, disrobed down to their underwear, and that the victim was rubbing his penis between her legs. Appellant stated to the victim that they needed a condom, but that he did not have one. According to appellant, the victim stated that she had one in her purse. When she went to get it, her purse fell open on the floor, whereupon appellant saw her driver's license which indicated that she was only 16 years-old. Appellant testified that he thought the victim was a 19 year-old college student. When he discovered her age, appellant testified that he got dressed to leave, the victim begged him to stay, but he left and walked home through the woods. Appellant testified that he was at the victim's home between 3:00 p.m. and "no later than 4:20."

On rebuttal, Deputy Sheriff Justin Hayden, who worked in the Lucas County jail, testified that a couple of months before trial, while appellant was in jail, he had asked Hayden some questions about evidence collection. Hayden described the conversation as follows:

> "That's how the conversation had started, if they were able to lift prints off of the bike. I told him I'm not an evidence tech or what have you, that I haven't been trained at the academy and everything else. It seemed reasonable to me they could lift prints off of a bike. * * *

> "From that point on [the conversation] did continue. He had gone into stating that they were either getting ready to take a blood sample from him or they had already taken a blood sample from him, but that he wasn't worried about the results of that blood sample. He knew it was for DNA reasons. * * *

> "He said he wasn't worried about them taking his blood, because he knew that he hadn't left any type of evidence at the crime scene that they had accused him of, that he wasn't even there. He had been at his girlfriend's house the morning that the police were stating he was at wherever the victim-wherever this crime had taken place, that he was at his girlfriend's house. * * *

> "He said that while he was at-while he was at his girlfriend's house when this crime was taking place, he was-you want me to use the exact words? He stated that he was at his girlfriend's house [f* *king] her at the time that the police were saying that he was at this crime scene. * * *

-5-

> "He had gone on to say that, you know, he couldn't have left any evidence at the crime scene because he wasn't at the crime scene. He was at his girlfriend's house, that he doesn't-he wasn't mad at the girl, but he doesn't know the girl, wasn't mad at the girl for, I guess, identifying him or something, but that, you know, he didn't know the girl."

> Hayden testified that he had not made a report of the conversation because it was not unusual for the inmates to talk to him about their cases and there was nothing unusual about what appellant said to him. Hayden, however, stated that during the evening news, after the first day of appellant's trial, he heard that appellant was going to claim that the sexual contact with the victim was consensual. Because that was not what appellant had told Hayden in jail, Hayden came forward and was able to get in contact with the prosecutor's office the following morning, the second day of trial, before appellant testified.

ECF Dkt. #23-1 at 47-57.

## II.    PROCEDURAL HISTORY

### A.    State Trial Court

Petitioner was indicted by the May 2005 Term of the Lucas County, Ohio Grand Jury on one count of kidnapping of a minor with the purpose to engage in sexual activity in violation of ORC §2905.01(A)(4) and six counts of rape in violation of R.C. §2907.02(A)(2).  ECF Dkt. #23-1 at 1-3.

The case proceeded to a jury trial and on November 16, 2005, a jury found Petitioner guilty of all charges in the indictment.  ECF Dkt. #23-1 at 5-11.  On December 9, 2005, after a hearing, the trial court sentenced Petitioner to ten years on the kidnapping conviction and ten years each on the six rape convictions, with all sentences to run consecutive to one another, thereby totaling 70 years in prison.  *Id.* at 13-14.  The court also designated Petitioner a sexual predator.  *Id.* at 13.

### B.    Direct Appeal

Petitioner, through new counsel, filed a timely appeal to the Sixth District Court of Appeals, and presented the following assignments of error:

> 1. THE VERDICTS WERE UNSUPPORTED BY SUFFICIENT EVIDENCE AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

> 2. THE SENTENCE IMPOSED BY THE TRIAL COURT WAS EXCESSIVE AND CONTRARY TO LAW WHEN THE SENTENCE EXCEEDED THE MINIMUM TERM OF IMPRISONMENT ON THE BASIS OF FINDINGS MADE BY THE TRIAL JUDGE PURSUANT TO A FACIALLY UNCONSTITUTIONAL STATUTORY SENTENCING SCHEME.

> 3. APPELLANT WAS DEPRIVED OF EFFECTIVE ASSISTANCE OF COUNSEL.
>
> 4. PROSECUTORIAL MISCONDUCT DURING THE TRIAL RENDERED APPELLANT'S TRIAL FUNDAMENTALLY UNFAIR AND A NEW TRIAL SHOULD BE GRANTED.

ECF Dkt. #23-1 at 18-43.  On February 29, 2008, the Ohio appellate court addressed each of Petitioner's assignments of error and affirmed the judgment of the trial court. *Id*. at 44-69.

### C.    Supreme Court of Ohio

Petitioner, through new counsel, filed a notice of appeal to the Ohio Supreme Court.  In his memorandum in support of jurisdiction, Petitioner asserted the following propositions of law:

> I.      The remedy that this Court set forth in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856 violates the Ex Post Factor and Due Process Clauses of the United States Constitution.
>
> II.     Trial courts do not have the authority to impose consecutive sentences.
>
> III.    Trial courts deny defendants procedural due process of law by failing to provide reasons for imposing consecutive sentences.  Fifth and Fourteenth Amendments to the United States Constitution; Section 16, Article I of the Ohio Constitution.

ECF Dkt. #23-1 at 70-82.

On August 6, 2008, the Ohio Supreme Court denied Petitioner leave to appeal and dismissed his appeal as not involving any substantial constitutional question.  ECF Dkt. #23-1 at 110.

### D.    Ohio Appellate Rule 26(b) Application for Reopening

On June 18, 2008, Petitioner, pro se, filed an application for reopening of his appeal pursuant to Rule 26(b) of the Ohio Rules of Appellate Procedure in the Ohio appellate court.  ECF Dkt. #23-1 at 111-130.

On July 17, 2008, the Ohio appellate court denied Petitioner's application to reopen his appeal, finding that he failed to demonstrate good cause for the untimely filing of his application. ECF Dkt. #23-1 at 131-133.

### E.    First § 2254 Federal Habeas Corpus Petition

On March 9, 2009, Petitioner pro se filed his first § 2254 federal habeas corpus petition in this Court.  ECF Dkt. #23-1 at 135; Case Number 3:09CV546.  Petitioner presented the following grounds for relief:

**GROUND ONE:**

Petitioner received a[sic] unconstitutional sentence that violates  the Ex-post facto and Due Process clause of the U.S. Constitution.

**Supporting Facts:**

The Trial Court retroactively applied a sentence Guideline that was not effective at the date petitioner was sentenced.  Petitioner was sentenced on December 9th 2005, which the Ohio Guideline stated for the Petitioner to receive a Minimum or Concurrent sentence, but trial court stepped outside the guideline on the date of sentencing and retroactively applied a sentence guideline that came into effect (3) three months after Petitioner[sic] date of sentence, and gave Petitioner a maximum and consecutive sentence. See State v. Foster, 109 Ohio St. 3d 1, 2006-Ohio 856 and Blakely v. Washington 2004, 542 U.S.___ , 124 S.Ct. 2531.

**GROUND TWO:**

Ineffective Assistance of Appellate Counsel

**Supporting Facts:**

Petitioner was denied his right of effective appellate counsel by both counsels because both counsels failed to raise in direct appeal to the court of appeals and Ohio Supreme Court. That Petitioner was denied his right to effective assistance of trial counsel for not objecting to a retroactively applied unconstitutional sentence. Even after the court of appeals stated that it turned down the error because it was not objected to by Petitioner trial counsel.  Had the unconstitutional sentence been objected to and appellate counsel raised this ineffective claim by trial counsel, Petitioner[sic] appeal would have been overturned[ ] the first direct appeal.  This is clearly seen but appellate counsel failed to forsee[sic] or raise a meritable issue.

**GROUND THREE:**

Ineffective Assistance of Appellate Counsel

**Supporting Facts:**

Appellate counsels failed to raise that Petitioner was denied the right to effective assistance of trial counsel because trial counsel failed to object to the suppression of key exculpatory evidence. The forensic scientist Ms. Linsey Windau clearly stated that she did not report seminal fluid found inside victim vaginal area. This is clearly forseen [sic] but yet appellate counsels failed to raise this meritable error. Had the evidence been reported Petitioner would have had it tested to support his defense that he did not rape that alleged victim.  This evidence is favorable to Petitioner and had this error been raised by appellate counsels it would have change[sic] the outcome of the appeal.

**GROUND FOUR:**

Ineffective Assistance of Appellate Counsel

**Supporting Facts:**

Petitioners[sic] appellant[sic] counsel failed to raise meritable arguement[sic] when it raised "The verdicts were unsupported by sufficient evidence and against the manifest weight of evidence." By not argueing[sic] that the state witness to the case perpetraited[sic] falsehood, perjury, and contradiction in statements with evidence. Had this error been argued properly it would have shown the state witnes[sic] committed perjury to the courts destroying the witness credibility and that the Petitioner is legally innocent of the alleged charges.

**GROUND FIVE:**

Ineffective Assistance of Appellat[sic] Counsel

**Supporting Facts:**

Petitioner[sic] Appellat[sic] Counselors failed to raise a clearly forseen[sic] meritable error on appeal in the state court by not raise[sic], "prosecutoral[sic] misconduct, for violating discovery rules and Brady" by withholding and suppressing vauleble[sic] forensic evidence from Petitionor[sic] at trial. The states[sic] witness Ms. Linsey Windau clearly spoke on that she had this evidence of seman[sic] found inside Ms. Redlin vigina[sic] but never reported it or told it[sic] had it in it's[sic] posseion[sic] befor[sic] trial.  The prosecution knew it had this evidence but failed to tell Defendant/Petitionor[sic] it had it. To clearly contradict the alleged victim statement of claiming to be a virgin and to been raped by Petitionor[sic].  This evidence should have been told and test[sic] especially according to Petitioner[sic] theory of defense.

*Id*.  On February 5, 2010, the undersigned issued a Report and Recommendation recommending that the Court grant a conditional writ of federal habeas corpus on Petitioner's first ground for relief, and remand the case for resentencing, and dismiss with prejudice Petitioner's remaining grounds for relief.  ECF Dkt. #15 in Case Number 3:09CV546.  Both parties filed objections to the undersigned's Report and Recommendation and on April 7, 2010, Judge Gaughan rejected the undersigned's Report and Recommendation as to granting a writ on Petitioner's first ground for relief, but accepted the rest of the undersigned's Report and Recommendation dismissing with prejudice Petitioner's remaining grounds for relief.  ECF Dkt. #s 16-19 in Case Number 3:09CV546.

Petitioner filed an appeal of the District Court's Opinion to the Sixth Circuit Court of Appeals and on September 21, 2011, the Sixth Circuit affirmed the judgment of the District Court. ECF Dkt. #25 in Case Number 3:09CV546.  Petitioner thereafter moved for reconsideration in the Sixth Circuit Court of Appeals and on January 18, 2012, the Sixth Circuit reversed the District Court's decision as to Petitioner's first ground for relief and found that federal habeas corpus relief

was required because *Blakely* was violated as Petitioner's sentence did not fall within the prior conviction exception in *Blakely* and was not harmless error. ECF Dkt. #26 in case Number 3:09CV546. Judge Gaughan thereafter issued an Order remanding Petitioner's case to the Lucas County Court of Common Pleas for resentencing. ECF Dkt. #28 in Case Number 3:09CV546.

### F.   First Application for DNA Testing

On April 19, 2010, Petitioner filed an application for DNA testing in the Lucas County Court of Common Pleas. ECF Dkt. #23-1 at 241.

On July 12, 2010, the trial court denied the application, issuing findings of fact and conclusions of law. ECF Dkt. #23-1 at 252-257.

### G.   Second Application for DNA Testing

On August 2, 2010, Petitioner filed a second application for DNA testing in the trial court. ECF Dkt. #23-1 at 258-267.

On August 9, 2010, the trial court denied the application. ECF Dkt. #23-1 at 267.

On September 9, 2010, Petitioner filed a notice of appeal to the Ohio appellate court of the trial court's denial of his application for DNA testing. ECF Dkt. #23-1 at 269. In his merits brief, Petitioner asserted the following:

> 1.   The trial court erred in denying Appellant[sic] Application for DNA testing when it determined the Application would not be "outcome-determinative."
>
> 2.   The trial court error[sic] when it determined that there was no DNA of an unknown contributor anywhere else on the victim but on her neck.
>
> 3.   The trial court errored[[sic] when denying the Application because the trial court did not comply with R.C. 2953.75.

*Id.* at 269-289.

On September 23, 2010, the Ohio appellate court dismissed Petitioner's appeal as untimely. ECF Dkt. #23-1 at 289-290.

On November 19, 2010, Petitioner filed a notice of appeal and a motion for leave to file a delayed appeal in the Supreme Court of Ohio. ECF Dkt. #23-2 at 1-9.

On January 19, 2011, the Ohio Supreme Court denied Petitioner's motion for a delayed appeal. ECF Dkt. #23-2 at 11.

### H.    Delayed Application for Reopening Pursuant to Rue 26(b)

On May 27, 2011, Petitioner filed a delayed application for reopening his appeal.  ECF Dkt. #23-2 at 12-28.  Petitioner asserted that his appellate counsel was ineffective for failing to raise the following assignments of error:

> 1.    Trial counsel was ineffective for failing to "object" during voir dire and moven[sic] the Court to grant a "Remmer hearing" when two jurors stated the[sic] knew two witness[sic] in Defendants[sic] trial.
>
> 2.    Trial counsel was ineffective for failure to remove and allowing two bias[sic] jurors to render a verdict in defendants[sic] case in violation of the Sixth Amendment U.S. Constitution.

*Id.*  As cause for untimely filing his application, Petitioner explained that his appellate counsel denied him copies of his transcript.  *Id*. at 16.  He attached a copy of a letter from his appellate counsel in which she stated that she was unable to provide him with a copy of his transcript of proceedings because the court did not allocate funds for copying the transcript and mailing it to clients and she had to return her copy to the court once she filed her appellate brief.  *Id.* at 29.

On July 26, 2011, the Sixth District Court of Appeals found that Petitioner failed to show good cause for the untimely filing of his application for reopening based upon his inability to secure a copy of the trial transcript.  ECF Dkt. #23-2 at 32.  The appellate court also noted that there was no right to file a second or successive application for reopening under Rule 26(b).  *Id.* at 33.

On August 26, 2011, Petitioner filed a notice of appeal to the Ohio Supreme Court.  ECF Dkt. #23-2 at 34.  He raised the following propositions of law:

> 1.    Appellant was deprived of effective assitance[sic] of appellate counsel in his direct appeal.
>
>> a.    Trial counsel was ineffective for failing to object to four possible juror bios's[sic] and move the court to conduct a Remmer hearing.
>>
>> b.    The trial court abused it's[sic] discretion to not conduct a hearing and investigation on potential prejudice and bia's[sic] on jurors in violation of the Defendant 6th Amendment U.S.C.A. rights.

*Id*. at 36-75.

On November 16, 2011, the Ohio Supreme Court dismissed Petitioner's appeal as not involving any substantial constitutional question.  ECF Dkt. #23-2 at 79.

-11-

### I.    Second § 2254 Federal Habeas Corpus Petition

On February 15, 2012, Petitioner pro se filed another § 2254 federal habeas corpus petition. ECF Dkt. #23-2 at 80; Case Number 3:12CV419. As his grounds for relief, Petitioner presented the following:

> GROUND ONE:
>
> Denial of effective assistance of appellate counsel in appellant's direct appeal.
>
> Supporting Facts:
>
> Appellate counsel failed to raise a clearly forseen[sic], meritable error that would have overturned appellants[sic] direct appeal. By not raisen[sic] ["] trial counsel was ineffective for failing to object to preserve for appeal or move the court to conduct a "Remmer Hearing." When it was clearly " Extraneous" [sic] and "Internal Influences" by the personal relationship of party members for the State and jurors, and bia's[sic]) feelings by the jurors who had immediate family members who were victims of sexual abuse. In violation of appellant[sic[ U.S.C.A. 6th Amendment Rights.
>
> GROUND TWO:
>
> Denial of effective assistance of appellate counsel in appellants[sic] direct appeal.
>
> Supporting Facts:
>
> Appellate counsel failed to raise a clearly forseen[sic], meritable error that would have overturned appellants[sic] direct appeal. By not raising "the trial court abuse of discretion for not conducting a Remmer hearing and investigation." When the court clearly saw "extraneous and internal influences" by the personal relationship of party members for the State and jurors, and bia's[sic] feelings by the jurors who had immediate family members who were victims of sexual abuse. In violation of appellants[sic] U.S.C.A. 6th Amendment rights.

*Id.* at 83-84. On March 13, 2012, Judge Gaughan issued an Order transferring this federal habeas corpus action to the Sixth Circuit Court of Appeals as a second or successive petition. ECF Dkt. #4 in Case Number 3:12CV419; *see also* ECF Dkt. #23-2 in instant case at 86. Petitioner filed a motion under 28 U.S.C. §2244 for an order authorizing the District Court to consider his second or successive § 2254 petition. ECF Dkt. #23-2 in instant case at 88.

On October 29, 2012, the Sixth Circuit denied Petitioner's motion for an order authorizing the District Court to consider his second or successive § 2254 federal habeas corpus petition. ECF Dkt. #5 in Case Number 3:12CV419; *see also* ECF Dkt. #23-2 in instant case at 130.

### J.    Resentencing Hearing

On August 8, 2012, the trial court resentenced Petitioner pursuant to the District Court's mandate.  ECF Dkt. #23-2 at 134.  The trial court resentenced Petitioner to 10 years on the one kidnapping count and 10 years each on six rape counts.  *Id.*  The court ordered the sentences to run consecutively to one another and ordered five years mandatory post-release control.  *Id*. at 135.

Petitioner filed a notice of appeal of the resentencing order and raised the following assignments of error through counsel:

> 1.  The trial court erred by not undertaking a de novo resentencing.  The federal mandate ordered a resentencing after holding the trial court had committed a constitutional error during the first sentencing that was not harmless.
>
> 2.  Quinn's counsel provided ineffective assistance of counsel by not being prepared at the resentencing to argue the merger issue, the proportionality issue and whether the trial court could be impartial.  He also failed to advise the trial court that the merger issue had, in fact, been raised during the initial sentencing.
>
> 3.  Even if the trial court was not required to follow the statutory sentencing statutes in effect pre-Foster, the trial court erred by not merging the offenses of conviction for purposes of sentencing.
>
> 4.  The trial court violated the Ex Post Facto Clause of the U.S. Constitution and his right to due process of law by not applying R.C. 2929.14(E)(4) and 2929.41(A) when resentencing Quinn.
>
> 5.  The trial court erred by not recusing itself and seeking assignment of another judge to handle Quinn's resentencing.

ECF Dkt. #23-2 at 136, 152.  On February 4, 2013, Petitioner filed a pro se supplemental appellate brief in the appellate court.  *Id*. at 227.  The appellate court struck the pro se brief.  *Id*. at 237-238. The State of Ohio filed its appellate brief in February 14, 2013.  *Id*. at 239.  On May 13, 2013, the Ohio appellate court struck the State of Ohio's brief from the record, finding that the brief contained excessive use of single spaced block quotations.  *Id*. at 268. The State of Ohio thereafter filed an amended appellate brief and counsel for Petitioner filed a reply brief.  *Id*. at 270-300.

On January 31, 2014, the Ohio appellate court addressed each of Petitioner's assignments of error and affirmed the trial court's judgment.  ECF Dkt. #23-3 at 1-26.

### K.     Rule 26(b) Application for Reopening Appeal

On February 20, 2014, Petitioner pro se filed an application pursuant to Rule 26(b) of the Ohio Rules of Appellate Procedure to reopen his appeal. ECF Dkt. #23-3 at 27.  Petitioner asserted that his appellate counsel was ineffective for failing to raise the following assignments of error:

> 1. Trial counsel was ineffective for failing to file a belated motion for new trial C.R. 33, due to prosecutorial misconduct by the States[sic] suppression of exculpatory evidence that was withheld in violation of due process right creating a miscarriage of justice.
>
> 2. The State committed reversible error by the violation of discovery rules, Criminal Rule 16(B)(1d)F)(D) of the Ohio and United States Constitution.

*Id*. at 28-44.  Petitioner thereafter filed a supplemental brief to his Rule 26(b) application and asserted the following additional assignment of error:

> 4. Trial counsel was ineffective in his representation of Defendant.

ECF Dkt. #23-3 at 46.  On February 26, 2014, the State of Ohio filed a brief in opposition to Petitioner's Rule 26(b) application.  *Id*. at 51-55.  Petitioner then filed a motion to amend his Rule 26(b) application so that he could file an unsworn statement and he requested permission to exceed ten pages for his Rule 26(b) application.  *Id*. at 56-58.  The court granted both requests.  *Id*. at 60.

On May 8, 2014, the Ohio appellate court considered Petitioner's three assignments of error, noting that Petitioner had misnumbered his assignments. ECF Dkt. #23-3 at 61-68.  The court found that Petitioner's first two assignments of error were untimely and barred by res judicata and his ineffective assistance of trial counsel claim was previously ruled upon and was not relevant to the instant Rule 26(b) application alleging the ineffectiveness of appellate counsel.  *Id.*

### L.     Motion for Delayed Appeal to Ohio Supreme Court of Ohio Appellate Court's January 31, 2014 Affirmance of Trial Court Resentencing

On April 7, 2014, Petitioner pro se filed a notice of appeal and a motion for delayed appeal in the Supreme Court of Ohio, appealing the Ohio appellate court's January 31, 2014 decision affirming the trial court's resentencing order.  ECF Dkt. #23-3 at 69-76.

On May 28, 2014, the Supreme Court of Ohio denied Petitioner's motion for delayed appeal and dismissed his case.  ECF Dkt. #23-3 at 102.

**M.**   **Appeal to Ohio Supreme Court of Ohio Appellate Court's May 8, 2014 Decision Denying Petitioner's Rule 26(b) Application**

On June 19, 2014, Petitioner pro se filed a notice of appeal to the Ohio Supreme Court.  ECF Dkt. #23-3 at 103.  In his memorandum in support of jurisdiction, Petitioner asserted the following propositions of law:

> 1.   Appellate counsel was ineffective in appellant[sic] case createn[sic] a miscarriage of justice.
>
> 2.   The district court of appeals errored[sic] in claiming this[sic] his application to reopen appeal is barred by res judicata.
>
> 3.   The trial court errored[sic] when it failed to make statutory findings of fact under O.R.C. 2929.14 before imposing consecutive sentences.
>
> 4.   Appellant has a right by law to file an application to reopen App. R. 26(b).

*Id.* at 106.

On October 8, 2014, the Ohio Supreme Court declined to accept jurisdiction of Petitioner's appeal pursuant to Rule 7.08(B)(4) of the Supreme Court Rules of Practice, which allows the court one of four reasons to decline to accept an appeal, including that the appeal does not involve a substantial constitutional question, it does not involve a question of great general or public interest, or the appeal involves a felony but leave to appeal is not warranted.  ECF Dkt. #23-3 at 131.

**N.**   **Other Motions filed in Trial Court by Petitioner**

On December 3, 2013, Petitioner filed his third motion for DNA testing in the trial court. ECF Dkt. #23-3 at 132.

On January 29, 2014, Petitioner filed a motion for leave to file a delayed motion for a new trial pursuant to Rule 33 of the Ohio Rules of Criminal Procedure.  *Id*. at 140-152.  The trial court denied this motion on February 10, 2014.  *Id*. at 153.

On February 11, 2014, Petitioner filed a motion to vacate void sentence in the trial court. ECF Dkt. #23-3 at 155-159.  On February 14, 2014, the trial court denied the motion.  *Id*. at 160.

**O.**   **Appeals of Trial Court Denials of Motion for New Trial and Motion to Vacate**

On March 4, 2014, Petitioner filed a notice of appeal to the Sixth District Court of Appeals. ECF Dkt. #23-3 at 162-163.  Petitioner pro se raised the following assignments of error in his appellate brief:

-15-

1.   The trial court erred when denying Appellant's motion for new trial, violating rights guaranteed within the State and Federal Constitution

2.   The trial court erred when denying Appellants[sic] motion from relief of judgment, in not issuing findings of fact and conclusions of law

*Id.* at 172-189.  The State of Ohio filed an appellate brief.  *Id*. at 190-201.

On November 21, 2014, the Ohio appellate court addressed Petitioner's assignments of error, first finding that he failed to establish by clear and convincing evidence that he was unavoidably prevented from filing his motion for a new trial within the time required by Rule 33(B) of the Ohio Rules of Criminal Procedure. ECF Dkt. #23-3 at 206.  The court also found that Petitioner's motion for relief from judgment was untimely filed and res judicata barred Petitioner from raising the jury verdict form issue in this appeal as he could have raised it on direct appeal but did not. *Id*. at 209.

On January 15, 2015, Petitioner pro se filed a notice of appeal and a motion for delayed appeal to the Supreme Court of Ohio.  ECF Dkt. #23-3 at 211-218.

According to the Ohio Supreme Court's website, on March 11, 2015, the Ohio Supreme Court denied Petitioner's motion for delayed appeal and dismissed his case.  *See* Case Number 2015-0079 at www.supremecourt.ohio.gov.

## III.   INSTANT § 2254 FEDERAL HABEAS CORPUS PETITION

On August 2, 2014, Petitioner pro se filed the instant § 2254 federal habeas corpus petition. ECF Dkt. #1.  In this petition, Petitioner asserts the following grounds for relief:

GROUND ONE:

The trial court violated Mr. Quinn's Ex Post Facto Clause and Due Process rights by the U.S. Constitution.

Supporting Facts:

When Mr. Quinn was resentenced on August ___, 2012, the trial court applied a sentence law that was effective on that date, instead of applying the sentence law that was effective on the date of the alleged crime [sic] took place on July 18, 2005. Which would have given Mr. Quinn a sentence that would have been minimum/concurrent, do[sic] to a U.S. Supreme Court holding that was effective on that date, which is "Blakely v. Washington (2004), 542 U.S. __, 124 S.Ct. 2531.

GROUND TWO:

Petitioner was denied of effective assistance of counsel

Supporting Facts:

Trial counsel in this case was not prepared to argue the merger issues of Petitioner[sic] sentence, failed to explain to the trial court why the original sentence was void and a de novo sentencing was required, failed to file any sentencing memorandum, or one single case to support any arguement[sic] concerning the stated claims along with a significant pronouncement from the Ohio Supreme Court that upholds merger of Petitioner[sic] charges, and failed to argue and offer one supporting case for the need of an impartial trial court Judge and proportionality of sentences.

GROUND THREE:

The trial court erred by not recusing itself and seeking another Judge do[sic] to the court[sic] bia's[sic] behavior towards Petitioner at resentencen[sic] hearing.

Supporting Facts:

The trial court Judge has hostile and ill spirit towards Petitioner, in which the court continues to violate Petitioners[sic] constitutional right's[sic] by failing and ignoren[sic] sentencen[sic] law's[sic] effective and apply to Petitioner[sic] sentence laws he wants to apply.  Along with in dealing with Petitioner he refuses to have an impartial mind, but states hostile words and willingness to ignore the law, and state he will do within his power not to allow Petitioner to be free ever again.  Do[sic] to the court lack of impartiality the Judge refuses to recuse itself, violating Petitioner[sic] rights.

GROUND FOUR:

The trial court erred by applying a viod[sic] sentence and not undertaking a de nova[sic] review of sentence.

Supporting Facts:

The Federal Mandate render[sic] Petitioner original sentence a voidable sentence.  However the trial court refused to have a de novo sentence finding that Federal Mandate did not permit or necessitate that given[sic] Petitioner a voided sentence, but imposed a sentence contrary to law, because the trial court unconstitutionally made inference from Petitioner[sic] prior record, presumption of recidivism which led to Petitioner receiven[sic] a[sic] unconstitutional maximum/consecutive sentence of (70) seventy years.

GROUND FIVE:

Trial court erred by not merging the offenses of conviction for the purpose of sentencing, even without the presumption of concurrent sentences.

Supporting Facts:

Petitioner Mr. Quinn is entitled to merger of the offenses he's charge[d] for, because they stemmed from only one purpose, and intent and that was for the purpose of rape.  The Ohio Supreme Court created a new way to evaluate count's[sic] of conviction should be merged for sentencen[sic] purposes Ohio Revised Code 2941.25 State-vs-Johnson, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061.  This law applies to Mr. Quinn for the same conduct within this case falls under rape and the record

-17-

> shows that petitioner state of mind was to commit rape.  Thereby the 6 counts of rape and 1 count of kidnap against one person deriven[sic] from 1 offense should be merged, and Mr. Quinn sentenced to one offense in which the court should elect to choose.

*Id.*  On February 5, 2015, Respondent filed his answer/return of writ.  ECF Dkt. #23.  On February 17, 2015, Petitioner filed a traverse.  ECF Dkt. #24.  On March 4, 2015, Respondent filed a reply to Petitioner's traverse.  ECF Dkt. #25.

A plethora of other motions filed by Petitioner are pending before this Court and they will be addressed in turn.  ECF Dkt. #s 9, 12, 13, 14, 26.

## IV.    PROCEDURAL BARRIERS TO REVIEW

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a federal writ of habeas corpus.  As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).  However, the Supreme Court has also held that it would be in the interests of the parties and the courts for the merits of a petition to be addressed forthwith if it is clear that the applicant does not even raise a colorable federal claim. *Granberry v. Greer*, 481 U.S. 129, 135 (1987); *Prather v. Rees*, 822 F.2d 1418, 1421-22 (6th Cir. 1987) (lack of exhaustion was properly excused where petition was plainly meritless, the state had not addressed exhaustion, and disposition of the case would not offend federal-state comity).

### A.    Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the date judgement became final.  28 U.S.C. §2244(d)(1). Here, Respondent asserts that Petitioner's original § 2254 federal habeas corpus petition before this Court is timely.  ECF Dkt. #23 at 32-33. However, Respondent asserts that the grounds for relief that Petitioner seeks to add to his original § 2254 federal habeas corpus petition as he requests in his October 16, 2014 motion for leave to amend his petition are barred by the AEDPA statute of limitations.  *Id.* This motion will be addressed in turn.

-18-

### B.        Exhaustion of State Remedies

As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004).  The exhaustion requirement is satisfied "once the federal claim has been fairly presented to the state courts." *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987).  To exhaust a claim, a petitioner must present it "to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *see also McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  General allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present" claims that specific constitutional rights were violated. *McMeans*, 228 F.3d at 681 citing *Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2d Cir. 1984).

In order to have fairly presented the substance of each of his federal constitutional claims to the state courts, the petitioner must have given the highest court in the state in which he was convicted a full and fair opportunity to rule on his claims.  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  A petitioner fairly presents the substance of his federal constitutional claim to the state courts by: (1) relying upon federal cases that use a constitutional analysis; (2) relying upon state cases using a federal constitutional analysis; (3) phrasing his claim in terms of constitutional law or in terms sufficiently particular to allege the denial of a specific constitutional right; or (4) alleging facts that are obviously within the mainstream of constitutional law.  *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004), quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003); *see also Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993) cert. denied, 509 U.S. 907 (1993)(quotation omitted).  In *Harris v. Lafler*, the Sixth Circuit laid out the options that a district court may pursue in dealing with a petition that contains unexhausted claims:

> When faced with this predicament in the past, we have vacated the order granting the writ and remanded the case to the district court so that it could do one of four things: (1) dismiss the mixed petition in its entirety, *Rhines*, 544 U.S. at 274, 125 S.Ct. 1528; (2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims, *id.* at 275, 125 S.Ct. 1528; (3) permit the petitioner to dismiss the unexhausted claims and proceed with the exhausted claims, *id.* at 278, 125 S.Ct. 1528; or (4) ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit, 28 U.S.C. § 2254(b)(2).

553 F.3d 1028, 1031-32  (6th Cir. 2009).  The Supreme Court has held that "the petitioner has the burden . . . of showing that other available remedies have been exhausted or that circumstances of peculiar urgency exist."  *Darr v. Burford*, 339 U.S. 200, 218-19 (1950), *overruled in part on other grounds*, *Fay v. Noia*, 372 U.S. 391 (1963).  A petitioner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal, or that he is actually innocent of the crime for which he was convicted.  *Coleman v. Thompson*, 501 U.S. 722, 748 (1991).

### C. Procedural Default

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement.  *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  In these cases, "the state judgment rests on independent and adequate state procedural grounds."  *Coleman,* 501 U.S. at 730.  For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment."  *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) citing *Ylst v.Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis removed).  When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition.  *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991).  In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there is no independent and adequate state grounds for a state court decision absent a clear statement to the contrary.  *Coleman*, 501 U.S. at 735.

Applying this presumption, the Sixth Circuit Court of Appeals established a four-pronged analysis to determine whether a claim has been procedurally defaulted.  *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986).  Under the *Maupin* test, a reviewing court must decide:

(1)    whether the petitioner failed to comply with an applicable state procedural rule;

(2)    whether the state courts actually enforced the state procedural sanction;

(3)    whether the state procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review; and

(4)     if the above are met, whether the petitioner has demonstrated "cause" and "prejudice."

*Id.* at 138.

Under the first *Maupin* prong, there must be a firmly established state procedural rule applicable to the petitioner's claim and the petitioner must not have complied with the rule. *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991); *Franklin v. Anderson*, 434 F.3d 412, 418 (6th Cir. 2006). The question of whether a state procedural rule was "firmly established and regularly followed" is determined as of the time at which it was to be applied. *Richey v. Mitchell*, 395 F.3d 660, 680 (6th Cir. 2005).

Under the second *Maupin* prong, the last state court to which the petitioner sought review must have invoked the procedural rule as a basis for its decision to reject review of the prisoner's federal claims. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) (appeal dismissed for lack of jurisdiction); *Richey*, 395 F.3d at 678 ("a lapsed claim survives if the state court overlooked the default and decided the claim anyway"); *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004) (if a state court does not expressly rely on a procedural deficiency, then a federal court may conduct habeas review); *Gall v. Parker*, 231 F.3d 265, 310 (6th Cir. 2000)(even if issue is not raised below, where state supreme court clearly addresses the claim, no procedural bar arises); *Boyle v. Million*, 201 F.3d 711, 716-17 (6th Cir. 2000)(where a state appellate court characterizes its earlier decision as substantive, the earlier decision did not rely on a procedural bar; therefore, the cause and prejudice test does not apply).

Under the third prong of *Maupin*, a state judgment invoking the procedural bar must rest on a state law ground that is both independent of the merits of the federal claim and is an adequate basis for the state court's decision. *Munson v. Kapture*, 384 F.3d 310, 313-14 (6th Cir. 2004).

Under the fourth *Maupin* prong, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 751. "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), *cert. denied*, 490

-21-

U.S. 1068 (1985).  If a petitioner fails to show cause for his procedural default, the reviewing court

need not address the issue of prejudice.  *Smith v. Murray*, 477 U.S. 527 (1986).

Simply stated, a federal court may review federal claims:

that were evaluated on the merits by a state court. Claims that were not so evaluated,
either because they were never presented to the state courts (i.e., exhausted) or
because they were not properly presented to the state courts (i.e., were procedurally
defaulted), are generally not cognizable on federal habeas review.

*Bonnell v. Mitchel,* 301 F.Supp.2d 698, 722 (N.D. Ohio 2004).  The above standards apply to the

Court's review of Petitioner's claims.  Of course, Petitioner may excuse any procedural default with

a demonstration of "actual innocence" by the lesser "preponderance of the evidence" standard.

# V.    STANDARD OF REVIEW

Under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation

of the United States Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for a writ of habeas

corpus.  The AEDPA provides:

(d)    An application for a writ of habeas corpus on behalf of a person in
custody pursuant to the judgment of a State court shall not be granted
with respect to any claim that was adjudicated on the merits in State
court proceedings unless the adjudication of the claim –

(1)    resulted in a decision that was *contrary to*, or involved an
*unreasonable application of*, clearly established Federal law, as
determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in the
State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).  In *Williams v. Taylor*, the Supreme Court clarified the

language of 28 U.S.C. § 2254(d) and stated:

Under the "contrary to" clause, a federal habeas court may grant the writ if
the state court arrives at a conclusion opposite to that reached by this Court
on a question of law or if the state court decides a case differently than this
Court has on a set of materially indistinguishable facts.   Under the
"unreasonable application" clause, a federal habeas court may grant the writ
if the state court identifies the correct governing legal principle from this
Court's decisions but unreasonably applies that principle to the facts of the
prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Further, the Supreme Court declared that "a

federal habeas court making the 'unreasonable application' inquiry should ask whether the state

-22-

court's application of clearly established federal law was objectively unreasonable." *Id.* Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*; *see also Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

The Sixth Circuit Court of Appeals offers the following guidelines for applying the AEDPA limitations:

A.    Decisions of lower federal courts may not be considered.

B.    Only the holdings of the Supreme Court, rather than its dicta, may be considered.

C.    The state court decision may be overturned only if:

    1.    It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' [the Supreme Court precedent must exist at the time of petitioner's direct appeal] or;

    2.    the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or

    3.    'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or

    4.    the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

D.    Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable. That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.' 'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'

E.    Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001) (internal citations omitted).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice." *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986). The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

> (e)(1)In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e). The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact. *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993). The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997). Further, a reviewing federal court may not ignore the pronouncement of a state appellate court on matters of law. *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000).

The United States Supreme Court recently observed:

> Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Harrington v. Richter,* __ U.S. __, 131 S.Ct. 770, 786-787 (2011).

## VI. LAW AND ANALYSIS

### A. Petitioner's Motion to Amend his § 2254 Federal Habeas Corpus Petition

Respondent first opposes Petitioner's pending motion to amend his § 2254 federal habeas corpus petition in which he seeks to add three grounds for relief. ECF Dkt. #23 at 31-37. Petitioner seeks to add the following grounds for relief:

-24-

GROUND SIX:

The denial of effective assistance of appellate counsel in direct appeal

Supporting Facts:

Petitioner[sic] appellate counsel denied Mr. Quinn effective counsel by failing to raise in direct appeal trial counsel was ineffective by not filen[sic] a motion for leave to file a belated motion for new trial, when at the resentencing hearing when trial counsel knew the state prosecution committed prosecutorial misconduct creating a miscarriage of justice by suppressing key exculpatory evidence that was impeaching and would have proved Mr. Quinn[sic] innocents[sic].  In violation of Due Process rights and discovery rules.  When it's on record trial counsel knew of suppressed D.N.A. but failed to file any motion or caselaw in support of the denial of suppressed evidence in violation of Brady v. Maryland.

GROUND SEVEN:

The denial of effective assistance of appellate counsel in direct appeal

Supporting Facts:

Appellate counsel denied Mr. Quinn effective assistance of Appellate counsel, when counsel failed to raise a recent United States Supreme Court rulen[sic] upholding Ex pos Facto Clause in direct appeal.  Had Counsel raised this issue in direct appeal, Mr. Quinn direct appeal would have been reversed.  This was brought to counsel[sic] attention but counsel failed to raise it.  This upholding in Peugh-vs-United States Case no. 12-62 upholds ex post facto clause in criminal convictions, which would have reversed the case for Petitioner to be sentence[sic] according to the law on July 18, 2005.

GROUND EIGHT:

The denial of effective assistance of appellate counsel in direct appeal

Supporting Facts:

Appellate counsel fails to raise in direct appeal that the trial court errored[sic], by failing to apply findings of facts under Ohio Revised Code 2929.14(C)(4) befor[sic] imposing consecutive sentences. When Mr. Quinn was resentence[sic] to a[sic] illegal sentence, befor[sic] imposing any consecutive sentence Ohio law required trial judges to apply statutory findings of fact in which in this case the trial court did not find.

ECF Dkt. #9-1 at 1-3.

Respondent asserts that these grounds for relief are barred by the AEDPA statute of limitations and/or by res judicata, or they are alternatively unreviewable by this Court because Petitioner must first seek authorization with the Sixth Circuit for this Court to consider his grounds for relief as this is a second or successive § 2254 petition.  ECF Dkt. #23 at 31-37.

The undersigned recommends that the Court deny Petitioner's motion to amend because this Court lacks jurisdiction to consider the grounds for relief that Petitioner presents in this motion as they are second or successive. ECF Dkt. #9. The statute concerning second successive § 2254 federal habeas corpus petitions, 28 U.S.C.§ 2244, provides:

> (1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.
>
> (2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless:
>
>> (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>
>> (B) (i) the factual predicate for the claim could not have been discovered previously through the exercise of due dilligence; and
>>
>> (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for the constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2244(b). Before filing a second or successive § 2254 petition, the AEDPA requires a petitioner to first obtain an order "authorizing the district court to consider" the petition from the appropriate court of appeals. 28 U.S.C. § 2244(a)(3).

A subsequently filed § 2254 federal habeas corpus petition is not deemed "second or successive" under the AEDPA merely because it is filed second or successive in time. *In re Salem*, 631 F.3d 809, 812 (6th Cir.2011) (citing *Panetti v. Quarterman*,551 U.S. 930, 944, 127 S.Ct. 2842, 168 L.Ed.2d 662 (2007) ). Under relevant caselaw, a subsequent § 2254 federal habeas corpus petition is not a second or successive petition if (1) the claims asserted in that petition were not ripe at the time an earlier petition was filed, *see Stewart v. Martinez-Villareal*, 523 U.S. 637, 643-646, 118 S.Ct. 1618, 140 L.Ed.2d 849 (1998) (finding that when a second petition presents a claim identical to a claim that was included in an earlier petition but was not yet ripe for review, the court should treat both petitions as a single application for habeas relief), or (2) if the subsequently filed petition attacks a state court judgment that was not attacked in the previous petition. *Magwood v. Patterson*, 561 U.S. 320, 130 S.Ct. 2788, 2796, 177 L.Ed.2d 592 (2010).

With regard to subsequently filed federal habeas petitions challenging resentencing judgments, "the Sixth Circuit has determined that a subsequent habeas petition is not second or successive where it raises a claim that originates at resentencing, and which could not have been addressed in the earlier petition." *Barclay v. Tibbles*, No. 5:13CV124, 2014 WL 809197, at *10 (N.D. Ohio Feb. 28, 2014), citing *Banks v. Bunting*, No. 5:13CV1472, 2013 WL 6579036, at *5 (N.D. Ohio Dec. 13, 2013), citing *Lang v. United States*, 474 F.3d 348, 351-352 (6th Cir.2007). If a subsequently filed § 2254 federal habeas corpus is deemed a "second or successive petition," a petitioner must first obtain an order from the court of appeals "authorizing the district court to consider" the petition.  28 U.S.C. § 2244(b)(3)(A).  "When no such order has been sought by a petitioner, the district court must transfer the second or successive petition to the Sixth Circuit 'for want of jurisdiction...rather than dismiss [it] outright.'" *Barclay,* 2014 WL 809197, at *10, quoting *In re Smith*, 690 F.3d 809, 810 (6th Cir. 2012).

The Sixth Circuit's holding in Petitioner's previously filed second, successive § 2254 federal habeas corpus petition sheds light into how claims filed by Petitioner following his resentencing would be handled, such as those presented in the instant motion to amend:

> Before addressing the merits of Quinn's motion [for an order authorizing a second, successive petition], this court should address the possibility that this motion need not be construed as a second or successive §2254 habeas petition because Quinn has yet to file a §2254 habeas petition following his 2012 resentencing. **A §2254 habeas petition filed after a resentencing hearing avoids the bar on second and successive petitions set forth at 28 U.S.C. §2244(b) only to the extent that the petition raises claims that arose during resentencing or could not have been raised in the first §2254 habeas petition**. *See Lang v. United States*, 474 F.3d 348, 351-53 (6th Cir. 2007); *see also Magwood v. Patterson*, 130 S. Ct. 2788, 2803 n. 16 (2010) (declining to decide whether the underlying conviction could be attacked in a §2254 petition filed after resentencing, but noting this court's decision in *Lang*). However, Quinn is challenging an issue [voir dire] that could have been challenged in his first §2254 habeas petition. Thus, he must obtain authorization from this court [the Sixth Circuit] before the district court may consider those claims. *See* 28 U.S.C. §2244(b).

ECF Dkt. #23-2 at 131-132 [emphasis added]; *see also* ECF Dkt. #2-3 in Case Number 3:12CV419. In Case Number 3:12CV419, Petitioner had asserted the ineffectiveness of appellate counsel for reasons than those presented in the instant petition, including appellate counsel's alleged failure to assert on direct appeal trial counsel's ineffectiveness in failing to object to biased jurors and to fail to move the trial court to conduct a *Remmer* hearing.  ECF Dkt. #23-2 at 132-133. The Sixth

-27-

Circuit held that Petitioner could have raised those claims in his initial federal habeas corpus petition as he had raised other ineffective assistance of counsel claims in his that petition. *Id.* at 133.

The undersigned notes that all three of Petitioner's potential grounds for relief presented in his instant motion to amend allege the ineffectiveness of appellate counsel. ECF Dkt. #9-1. While Petitioner asserts that he was unable to assert these grounds in a prior federal habeas corpus petition, the undersigned disagrees.

Petitioner's first potential ground for relief concerns his underlying convictions as he asserts ineffective appellate counsel for failing to raise on direct appeal his trial counsel's failure to file a motion for a new trial based upon alleged prosecutorial misconduct when key exculpatory evidence was suppressed which could have proved his innocence. ECF Dkt. #9-1 at 1. Since this ground concerns his innocence at trial and alleged misconduct occurring before or during trial, Petitioner could have raised this issue on direct appeal and in his first federal habeas corpus petition. Petitioner's remaining two potential grounds for relief also concern Petitioner's direct appeal, with the second ground discussing appellate counsel's failure to raise a United States Supreme Court case concerning ex post facto issues in which Petitioner concludes that if appellate counsel would have raised the case, his "direct appeal would have been reversed." *Id*. Petitioner's third potential ground for relief alleges that appellate counsel was ineffective in failing to raise on direct appeal that the trial court erred by making findings of fact required by ORC § 2929.14(C)(4) before imposing consecutive sentences. *Id.* None of the three potential grounds for relief concern Petitioner's resentencing that occurred on August 2, 2012.

Accordingly, the undersigned recommends that the Court find that it lacks jurisdiction in which to consider the grounds for relief presented in Petitioner's motion to amend as they are unrelated to his resentencing judgment and could have been raised at an earlier time. In order for this Court to consider those claims, Petitioner must first obtain an Order from the Sixth Circuit authorizing this Court to do so. *In re Sims*, 111 F.3d 45.

**B.**     **Current § 2254 Federal Habeas Corpus Petition**

-28-

As to Petitioner's current § 2254 federal habeas corpus petition, Respondent asserts that Petitioner has procedurally defaulted all of his grounds for relief.  ECF Dkt. #23 at 37-47.  Respondent contends that while Petitioner presented each of his grounds for relief in a direct appeal of his resentencing, he failed to file a timely appeal to the Ohio Supreme Court and that court denied his motion for a delayed appeal which bars this Court from considering his federal habeas corpus petition.  *Id.*

As indicated by Respondent, the record shows that Petitioner presented each of his grounds for relief in the current petition before the Ohio appellate court on direct appeal of his resentencing.  ECF Dkt. #23-2 at 161-170.  The Ohio appellate court addressed Petitioner's assertions in its January 31, 2014 decision and overruled each of them on the merits.  ECF Dkt. #23-3 at 1-26.

However, Petitioner did not file a timely direct appeal to the Supreme Court of Ohio.[1]  Rather, he filed a motion for a delayed appeal with that court on April 7, 2014.  ECF Dkt. #23-3 at 71.  The Supreme Court of Ohio denied Petitioner's motion for delayed appeal.  ECF Dkt. #23-3 at 102.

In order to perfect an appeal to the Supreme Court of Ohio, a defendant must file a notice of appeal within 45 days from the entry of the judgment being appealed.  Ohio S.Ct. Prac. R.

---

[1] The undersigned notes that Petitioner did file a Rule 26(b) application for reopening of his appeal with the Ohio appellate court on February 20, 2014.  ECF Dkt. #23-3 at 27.  However, Petitioner asserted only one ineffectiveness of appellate counsel issue, arguing that appellate counsel was ineffective in failing to assert such as failing to file a motion for new trial due to prosecutorial misconduct after the state allegedly suppressed exculpatory evidence.  *Id.* at 29-42.  Unrelated to the ineffectiveness of his appellate counsel, Petitioner also asserted that the prosecutor committed reversible error by violating state discovery rules.  *Id.* at 43-44.  Neither of these issues are raised in the instant federal habeas corpus petition.  Petitioner also filed a supplemental brief to his Rule 26(b) application, asserting an assignment of error as to the alleged ineffectiveness of trial counsel in failing to object to the trial court's imposition of consecutive sentences upon imprisonment.  *Id.* at 46-50.  On May 8, 2014, the Ohio appellate court ruled that Petitioner's first and second assignments of error were untimely as the direct appeal about which Petitioner asserts his assignments of error occurred six years ago.  *Id.* at 64-65.  The appellate court also noted that Petitioner's Rule 26(b) application was his third successive application for reopening which was also barred by res judicata.  *Id.*  The court also found that Petitioner failed to show good cause for the delay in filing his application for reopening.  *Id.* at 65.  Petitioner subsequently filed an appeal of this appellate court decision to the Supreme Court of Ohio and that court declined to accept jurisdiction of his appeal.  *Id.* at 131.  However, none of the assertions made by Petitioner in his Rule 26(b) application concern the grounds for relief in the instant federal habeas corpus petition.

7.01(A)(1)(a)(i).  Rule 7.01(A)(4) of the Ohio Supreme Court Rules of Practice provides that a defendant may file a motion for delayed appeal and a notice of appeal in a felony case when the time for filing a notice of appeal in the Supreme Court of Ohio has expired.  Ohio S.Ct. Prac. R. 7.01(A)(4)(a).  The Rule states that a defendant shall not file a memorandum in support of jurisdiction at the time of filing the motion for delayed appeal but shall wait to see if the Supreme Court of Ohio grants the motion for delayed appeal.  Ohio S.Ct. Prac. R. 7.01(A)(4)(b).

A federal habeas court is barred from considering issues that could have been raised in the state  courts, but were not, and which may not be presented to those state courts due to procedural default or waiver.  *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982).  The Sixth Circuit has recognized that the Ohio Supreme Court's denial of a motion for leave to file a delayed appeal is a procedural ruling sufficient to bar federal habeas corpus review. *Smith v. Ohio Dept. of Rehab. and Corr.*, 463 F.3d 426, 431-432 (6th Cir.2006) (appellant failed to comply with Ohio Supreme Court Rules by not filing appeal within period set forth by those rules); *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir.2004) (per curiam), cert. denied, 543 U.S. 989, 125 S.Ct. 506, 160 L.Ed.2d 375 (2004).

As the Sixth Circuit explained in *Bonilla*, "the applicable Ohio [Supreme Court] rules indicate that the denial of a motion for a delayed appeal is a procedural ruling, not a ruling on the merits." 370 F.3d at 497 (and unpublished Sixth Circuit cases cited therein).  In this case, as in *Bonilla*, the Ohio Supreme Court was "entirely silent as to its reasons for denying [the] requested relief." *See id.*  In such circumstances, it must be assumed that the state court enforced the applicable procedural bar to review. *Id.* (citing *Simpson v. Sparkman*, 94 F.3d 199, 203 (6th Cir.1996)).

When a petitioner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review is barred unless the petitioner can demonstrate cause for the default and actual prejudice, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Bonilla,* 370 F.3d at 497. "Cause" for a procedural default is ordinarily shown by "some objective factor external to the defense" which

-30-

impeded the petitioner's efforts to comply with the state's procedural rule. *Coleman*, 501 U.S. at 753 (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)).

In his traverse, Petitioner offers as cause for his untimely filing in the Ohio Supreme Court that his property was damaged in prison, he was unable to obtain transcripts and the court rules, and he was transferred to another prison.  ECF Dkt. #24 at 8.  However, Petitioner did not need transcripts in order to file his notice of appeal to the Ohio Supreme Court as he was only required to file the notice of appeal without any accompanying document that contained facts or legal issues for which he would have needed a transcript.  As to allegedly not having copies of court rules, the undersigned notes that this is not Petitioner's first time appealing to the Ohio Supreme Court as Petitioner had filed numerous notices of appeal to the Ohio Supreme Court, even filing such appeals pro se challenging intermediate Ohio appellate court denials of various motions for DNA testing, Rule 26(b) applications and motions for reconsideration.  ECF Dkt. #23-2 at 1-9, 34-75; ECF Dkt. #23-3 at 103.  Moreover, even if this were Petitioner's first time filing a notice of appeal to the Ohio Supreme Court and he was delayed by some condition of prison life, inconvenient conditions of prison life are insufficient to constitute cause in order to excuse a procedural default. Lewis v. Casey, 518 U.S. 343, 355 (1996).

Since Petitioner fails to show cause for his procedural default, this Court need not address the issue of prejudice.  *Smith*, 477 U.S. 527.

Accordingly, the undersigned recommends that the Court find that Petitioner has failed to present sufficient cause in order to excuse his untimely filing in the Ohio Supreme Court.

Finally, the undersigned recommends that the Court find that Petitioner cannot overcome the procedural default of his claims on the basis of a fundamental miscarriage of justice because he has not presented any evidence that he was "actually innocent." *Dretke*, 541 U.S. at 393. Petitioner mentions issues of credibility of the victim as to the rape convictions and attacks the DNA evidence presented at trial.  However, these are issues of credibility that are reserved for the trier of fact and Petitioner contradicts himself when he asserts in his fifth ground for relief in the instant federal habeas corpus petition that he was entitled to the merger of the kidnapping and rape sentences "because they stemmed from only one purpose and intent and that was for the purpose

of rape." ECF Dkt. #1 at 14.  He further states in this ground for relief that "the record shows that petitioner state of mind was to commit rape."  *Id*.

## VII.     CONCLUSION AND RECOMMENDATION

For these reasons, the undersigned recommends that the Court find that Petitioner has procedurally defaulted his grounds for relief and has failed to establish cause and prejudice or a fundamental miscarriage of justice in order to overcome the procedural default.  Moreover, for the above reasons, the undersigned recommends that the Court deny Petitioner's motion to file an amended petition.  ECF Dkt. #9.

As a result of the above recommendations, the undersigned consequently recommends that the Court deny Petitioner's other outstanding motions:  two motions for evidentiary hearing (ECF Dkt. #s 12, 26); a motion for discovery (ECF Dkt. #13); and a motion for appointment of counsel (ECF Dkt. #14).

DATE: April 27, 2015                                  */s/ George J. Limbert*
                                                              GEORGE J. LIMBERT
                                                              UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).